Your Honor, this case sums up to 3-16-0477. The people of the state of Illinois, Mrs. Appleby, Ms. Roosevelt, and Mr. Yankaway, defendant and appellant, arguing on behalf of defendant and appellant, Ms. Sherry R. Silver, arguing on behalf of the plaintiff, Appleby, Mr. Barry W. Fisk. Ms. Silver. Ms. Yankaway. Good morning, Your Honors. Counselor, may it please the Court, I am Sherry Silver, and I represent Ms. Roosevelt Yankaway on behalf of the State Appellant Defender. Your Honors, the question in this case is very narrow, and that is whether trial counsel's representation fell below an acceptable, reasonable level when she failed to enter a timely objection to prior bad crimes evidence that came in in violation of the pretrial ruling. This does not have anything to do with prosecutorial misconduct, as suggested by the State in its brief. This has nothing to do with the actual propriety of the ruling on the motion in limine prior to trial. We understand Montgomery. We understand the ruling. We're not challenging the ruling. Well, shouldn't the prosecutor, you talk about misconduct, doesn't the prosecutor have a responsibility to inform their witnesses that there's been a ruling on a motion to eliminate pleas refrained from mentioning prior offenses if they've been excluded? Absolutely. And to that extent, I agree with the Court. There is an obligation by the prosecutor to prepare your witnesses, to tell them to avoid certain subjects. We don't know that that didn't happen, though. There's nothing, there seems to be an indication from the argument of the post-trial motion that the prosecutor was as much taken by surprise as the defense attorney was taken by surprise by Nicole Peterson's testimony. Well, the prosecutor in the post-trial motion, in your reply brief, you say that the comment by the prosecutor about how Officer Peterson knew the defendant was somehow relevant. How is that comment relevant? The prosecutor was just explaining how Peterson knew the defendant, correct? Right. And that's all his or her testimony showed was that she knew the defendant from prior contacts. Prior contacts, specifically other burglaries. Well, she testified she knew him from the community and the quote was other burglaries, but she testified she was on a burglary task force, so that would be how she would be in the community was as a result of her being in the community investigating burglaries. So how does that suggest that he was the suspect or he was a defendant or he had been convicted of any of those burglaries? In the state's brief, if I could just have one second, in the state's brief they point out that her testimony was that, I'm probably looking at the wrong brief, that her testimony was that she was previously assigned to the burglary task force. One of the offenses that was ruled not admissible in the pretrial motion was a residential burglary. There was a residential burglary in 2012, I believe it was, and then the burglary that was going to be admissible for impeachment purposes if Roosevelt testified. That was in 2010. There's no indication of when she was previously assigned to the burglary task force. Was she testifying about these other burglaries in relation to that 2012 residential burglary, which would be clear violation of the pretrial ruling, or was she really talking about other burglaries that she was investigating as a member of the task force? We don't know, but it doesn't matter. Whatever way you want to look at it, the fact is that other crimes evidence came in and the defense attorney did not do anything about it. What could the defense attorney have done? She could have asked to approach the bench. Justice Kuhn, in one of the cases cited by the state, has some wonderful language for the appellate court that says something to the effect that the appellate court is often called upon to rule on issues of ineffective assistance of counsel that really are trial strategy that didn't work out. Her explanation was that this was trial strategy. She didn't want to bring attention to this improper testimony that came in, and at first blush, as we argued in the brief, that seems to make sense. However, Justice Kuhn's language, using the language of Leffler, Strickland, and any number of other cases, is that it has to be a sound trial strategy. Was this sound trial strategy to not do anything? She could have approached the bench. She could have asked the judge to approach the bench. The jury didn't need to know why, but she could have entered her timely objection right then and there, adequately preserving this issue for the appellate review. But that certainly would have called more attention to the statement regarding the burglaries at that time. So whether there was something else told to the judge, in the jury's mind, they saw the temporal connection there between what was just testified to and the request to approach the bench. So there are times when counsel believes that, you know, maybe the jury will miss it. Maybe it wouldn't be emphasized. There were other things talked about in that same sentence. So why wasn't that a reasonable trial strategy? Okay, the first part of my answer is that the jury has no idea why she's approaching the bench. They maybe could have guessed that it was something having to do with the testimony. They could have maybe guessed that she was asking to go to the restaurant. Well, you say maybe, and then when you say no, I'm sorry. In the juror's mind, I'm sorry. When you say maybe, you're basically laying out the different thoughts that may be going through the head of the defense attorney at the time, correct? At that time, and that's what we have to look at. And when we look at that, even in a Crankle inquiry, there's a strong presumption of effectiveness, correct? Yes. And at the Crankle inquiry, the defendant said that his attorney told him she was aware of the motion to eliminate. She was aware of what Peterson's testimony was. But she thought that by objecting, she'd be calling attention to the testimony, and it may have made things worse. Why is that an unreasonable strategy? Because she also knew that that testimony was devastating. She said it in her post-trial motion. She said that Nicole Peterson's testimony obliterated any chance of a fair trial for Roosevelt Yankaway. She used the word game changer. So are you weighing obliteration of a fair trial and game changing with maybe drawing more attention? You've already done this. Well, let's look at the sincerity of that argument. Of her argument? Of her argument. The State did not argue other crimes evidence in their closing argument, did they? No. So whatever error that may have occurred through that officer's testimony was not complicated or compounded, I should say, by closing argument, which is frequently the case where there is a violation of a motion to eliminate, and that is compounded at closing argument. That did not occur in this case, correct? Correct. This is an isolated remark that made no reference to prior arrests or prosecutions or convictions of Mr. Yankaway, just merely that she knew him through her capacity as a police officer, quote, unquote, investigating. If I may interrupt just there. Yes. It didn't end with just that. The prosecutor came back and continued questioning and asked, well, how many times have you had contact with Roosevelt? Oh, at least five times. Over all seasons, all times of the year. So who knows how long she's been in contact with him? And in the minds of the jurors, they're going, holy moly, this guy's in trouble all the time. That is propensity. In the minds of the jurors, it could be, my goodness, he gets burglarized a lot. That would be unusual, Your Honor, I have to say. I don't see why. She didn't say, I know him because he committed other burglaries. She said, I know him from the community, from the area, from other burglaries. She didn't say he committed other burglaries. She said service calls and other burglaries in my area. Yes, that is true. I think it would be, I don't know the area. I know that there are certain areas that are more prone to burglaries and other crimes. I don't know that area. I don't know where he lives. I don't know whether he would be subject to more burglaries. I think it would be an unusual circumstance for a juror to think a person could be burglarized at least five times and have the same officer show up. Your speculation about calling a sidebar that she could have been asking to leave the courtroom for a while, unless she left the courtroom right after the sidebar, what other reason could the jury think she was going up to talk to the judge about? They wouldn't know. They would have no idea. Do you, have you ever been in a sidebar? Yes. Okay. Did you ever ask the jury what they thought about that? No, I never talked to the jury afterwards. They don't like them. I will tell you, they do not like them. Because we tell them, you know, this, don't worry, if we have a sidebar, it's not something you did. It doesn't affect you. But they're all going, wait a minute, why are they talking and we're not hearing? I mean, in 13 years I talked to a few of them. They don't like them. And if you're talking about drawing attention, that's attention. On the other hand, she could have approached, she could have entered her objection, and the judge could have told the prosecutor at that point, move on, don't ask any more questions. And instead, nothing was done and the prosecutor got the chance to ask those additional questions. And that's what made this even more bad, more worse, more egregious, whatever that word is going to be, because it just emphasized the impropriety of Nicole Peterson's initial testimony. Trial counsel should have entered an objection by some means, whether at the bench or from the table, and I don't think, I think it's a matter of weighing worse and worse. Which one is worse? Well, Peterson's testimony was relevant with regard to the defendant's nickname, correct? Correct. And that's the reason she was called. So her contacts with the defendant, her knowledge of his nickname or street name, whatever you want to use, was certainly relevant, correct? Yes. But she could have easily just, the prosecutor, again, we go back to what Your Honor started with, that the prosecutor should have properly, more adequately prepped his witness. Right, but when you call a police officer to establish that she knows an individual from her contacts in the community with the defendant, that's something the jury is going to question perhaps anyway. But to specify burglaries, and to specify burglaries in relation to a party who is on trial. Again, it's an isolated remark, and how, let's talk about prejudice. Okay. Presuming the jury believes the identification testimony, the prior identification testimony, as opposed to the trial testimony, where would the prejudice be? If they believed Ali's statements to the police were true, and his identification testimony. Which prior identification testimony from Ali are we going to talk about? He picked him out of a lineup, correct? Ali, I think he picked him out of a lineup, but he was also a friend of his. He knew his brother, Dante. Right, and that was initially what Ali, who initially Ali identified as the person who he claimed he saw breaking into the house. It was Dante. He thought Bud was Dante. And then he changed his statement. And I think there was probably even a third version of Ali's statement. All made at the time that he was on MSR, he believed he was a suspect. And a person in that position is going to say what they need to say to cover their own rear. So he was saying what needed to be said. At trial, he was no longer on MSR, and clearly he was no longer a suspect. He then could turn around and say what was the truth is that it wasn't the defendant. I don't know who that was who kicked in the door. I didn't really see it. I don't know who that was. So who is the jury going to believe? Ali A, B, or C? Or Ali at trial? Well, who got into Ali's red van? He says that Roosevelt did. Right. And who saw a red van outside of the home? Well, it was on the surveillance video. And did Ms. Quiros see a red van outside too? I do not believe she said she saw a van. She was up in her bedroom, which was the loft area of their house, and she heard knocks at the door. And she ignored them. Then she heard a bang, and she, I guess, kind of peered over the stairs. I know this is silly, but I just visualized this cartoon of two characters meeting again and getting scared to death, and they both run their stairways. He was crawling up the stairs. He was crawling up the stairs. She looked down. She looked down so that she didn't get a good look at his face to make an ID. Correct. And she didn't see his hands either. I can't remember if she said his hands were covered, but she doesn't remember recalling seeing any gloves. She did not see any tattoos on his hands, which is where the little bun was. So she couldn't identify anybody. So the only person we have saying it was Roosevelt was Ali in Statement A, B, C, or D to the police that at a time that he was, he believed a suspect and not an MSR. So his statements are questionable. They're not reliable. His testimony at trial, who knows if it's reliable. If the jury's not going to believe one, are they going to believe the other? So the prejudice is Nicole Peterson coming in and testifying to the identification like that. So the prejudice, I think, is clear here. Unlike in many other cases with ineffective assistance of counsel, there is clearly prejudice. It is error under the rulings made pretrial. So we're asking Your Honors to find that counsel was ineffective for not lodging a timely objection to properly preserve this and reverse and remand for a new trial. Thank you. Thank you. Thank you. Mr. Jacobs? Mr. Jacobs, I'm sorry. Good morning. I'm Barry Jacobs on behalf of the people at Eppley. May it please the Court and counsel. How is it not prejudicial and suggestive to a defendant's propensity to commit crimes to not object and to allow this actually to even do the follow-up that the prosecutor did when Officer Peterson talked about how she knew the defendant? The State's position is that it's not prejudicial. In this case, to show prejudice, you have to first show that this one time mentioned by Officer Peterson, that she knew the defendant from prior calls for service and other burglaries in her assigned geographic area clearly violated the order in limine. And it's the State's position that it didn't. The follow-up questions by the prosecutor were an attempt by the prosecutor to redirect Officer Peterson, and he did successfully do so. She made the one mention. She did say she knew him from five contacts. She was a police officer for over 10 years as a police officer, I think 15 years with the police department. So it's the State's position that this is not a clear violation of that order because it's... Just because they didn't mention a particular conviction? Well, it's true. She didn't mention a conviction or a charge. She said she knew him, and then the prosecutor followed up with the question, you know him from basically every possible way as a witness, every possible gamut in your role as a police officer. And she agreed. There was no further mention. There wasn't a mention in the closing argument. There's no doubling down by her that she knew him this way. But here he was a defendant in a residential burglary case. He was. So that isn't suggestive of propensity even without mentioning? It could be had the defense attorney actually objected, as is your honored question, Counsel. I think that would have perhaps drawn much more attention. As it were, this just went by. The prosecutor, in the State's eyes, successfully was able to redirect the officer. And as you noted, this was not compounded in the closing argument. It was not mentioned again. It was not. I mean, I've seen many other cases where you have a police officer and they continue to refer to it, that they know them from a prior conviction or a prior incident. But that's not the case here. This was a very, I can use a better word, nebulous comment about she knew him. She had said she had been a member of the burglary task force at some time in the past. Whether she said, I'm just a police officer and I knew him from the community, there's still a potentially negative inference. Well, there's always a prejudice when a police officer says, I know so-and-so. How do you know him? From my contacts. Yes, it's different than a prejudice. The inference is going to be that there's somehow some criminal involvement. But here, as Justice Sinop mentioned, she highlighted the burglaries. She did mention burglaries. I'm not saying it's great, but it is a different animal than saying, he's been convicted of burglary or he's been charged with burglary. She said, I know him from other burglaries in my area. And the prosecutor's follow-up was appropriate, that you know him from every possible way, as a witness, as whatever, in your capacity as a police officer. That wouldn't change much. Wouldn't an objection and a curative instruction from the court to disregard any reference to burglary have been appropriate? It may have been appropriate. I mean, the state's position, even if you accept that this was an error by counsel not to object and ask for a curative instruction, it's still a reasonably sound trial strategy, and that's what we're evaluating here. But, yes, it would be appropriate to. It could be. Either one would have been appropriate. That's your point? Yes. Yes, she could have asked for a mistrial. She truly believed it was a game-changer, as she later said. She could have asked for a mistrial, but she didn't. Were there any notes from the jurors asking for transcript or any questions about any of her testimony in particular? I don't recall anything regarding her testimony or any other notes. Furthermore, if we could turn to the prejudice problem, this evidence was overwhelming. The jury clearly chose to believe, and counsel in her opening brief did admit, that Ali had been impeached with his prior statements. His prior statements to police, one of which was recorded, were consistent insofar as they described he lived next door, pulling into his driveway, seeing who he said, not Roosevelt, he said, Bud, and another gentleman named Red at this address, Bud being on the porch, the steps. And then he describes Bud getting into his car and eventually going and kicking it in the store. That's the first statement. The second statement he clarifies that Bud is actually Roosevelt, not Dante. And then the third statement, which he gave on February 4th, 2015, which was recorded, he consistently says the same course of events. He sees him on the porch, comes across, and then he goes and kicks it in the door. It identifies Roosevelt. Does that match with the surveillance footage? It does. It does. You see an individual on it. I mean, that is a very difficult disc to play, at least it was for me. I've watched it many times. You do see someone dressed in a hoodie, dark pants, get into the car. And that's the description that the victim gave. Correct. Correct.  Which, as I said, were recorded and were consistent to the point where he identified Bud getting into the car. Yes. And the videotape, you know, this is somewhat overwhelming in a case like this where you'd have that kind of videotape evidence and a witness outside who could identify the person. So in the state's, it's the state's position that there was no reasonable probability that this would have gone any other way. But for this alleged error by counsel, or this, I guess, putative would be a better word, it really was a difficult position for counsel to either object and highlight the evidence. She could have approached the bench, but as Justice Hudson observed, that draws attention to the testimony. She chose, according to her motion, her post-trial motion, she chose to take a path of silence, and she did raise it later in that post-trial motion. And it was litigated, and the court found, based on the other evidence, that this was not an outcome-determinative factor. So with respect to ineffective assistance, how is the trial courts finding it? It's not binding on us, correct? Correct. But at the pre-crinkle inquiry, I believe the defendant did say he thought she had his best interest at heart, but he didn't, she did not, of course, object, and the court agreed that this was not determinative in this case. If there are no further questions, I would just issue my prayer that the court affirm this conviction, find that there was not ineffective assistance of counsel. Ms. Silver. It's very true that Roosevelt at the, I can't remember if he wrote it in his letter to the judge or if it was at the hearing, but he said that it's clear that Kim Bilbrey, the defense attorney, had his best interest at heart. Any defense attorney hopefully would, but even one error that's as serious as this can constitute ineffective assistance of counsel. Even if you're looking at her entire performance, one error of a great magnitude such as this can constitute ineffective assistance of counsel. Again, I'm going to reiterate that, yes, she had the situation in front of her, the circumstances were there, but it has to be, as all the case law says, it has to be a sound trial strategy, and I think that's what this comes down to for your honors. Was it sound for her to weigh one really bad option against another really bad option, and is that a proper way to really determine this? Is it an obliteration of a fair trial, or is it getting the jury a little ticked off because you've approached the bench to enter an objection? The argument, the closing argument, again, was never mentioned, correct? Correct. She gave a vigorous argument that Mr. Ali's testimony was not credible, and this is a loose ID case. Correct. And the prosecutor never mentioned it, and I think probably because he knew, and I apologize if it was a male or female, I don't remember it right now, the prosecutor didn't mention it clearly because the error was there. I think the prosecutor knew that this was an error and don't emphasize it in closing argument. But in fact, you know, like the state just argued that the prosecutor asked the question, Peterson made her statement that she knew him from the burglaries and service calls in the area, and the prosecutor ended it. No, there were six additional questions. That's not ending it. If the defense attorney had gone up to the bench and to her objection, the judge could have simply said to the prosecutor, you know, move on. And that's all. Not even giving an instruction to disregard it. He didn't even really have to do that. Just tell the prosecutor to stop and move on, and then that didn't happen. You know, her testimony was that her name, what do you do for a living, I'm the Community Orienting Policing Division. HUD, whatever that is. The initials are COP, so it works. She's assigned to a specific area, and I think she then later said that her job is to investigate any issue of the day or something of that nature. And that's how, and then, okay, and so how often do you see her? How do you know it? From the community, from the area, from other burglaries. That's what her job was, and she did not say he committed other burglaries. Her exact testimony is at page two of our reply brief. It's also quoted in the state's brief. Prosecutor asked her, how do you know the individual named Roosevelt Yankaway? Previous calls for service and other burglaries in my area. And the prosecutor states as trying to redirect her, not going into burglaries, again using the word burglaries, but do you know him from every gambit, from a witness, from calls for help, from everything under the sun as a police officer? That includes people who are suspects, Your Honor. That's not ruling out that possibility. She's talking about investigating him as a potential suspect in other burglaries, and that's, I'm sure, what the jury had in their minds. And that's what the problem is here. This other evidence came in. In terms of the surveillance video, just very quickly on that. Very difficult to watch. The counsel mentioned mistrial. Would it have been grounds for a mistrial? If the defense attorney is honest in her opinion that this testimony obliterated any chance at a fair trial, sure, she should have asked for a mistrial. She could have done that at the bench also, and the judge could have said, denied, move on, or granted it, who knows. But, yes, this could have been grounds for a mistrial. I don't remember if somebody used the language in this case, but we always use the language. The bell was rung. You can't unring it. So a mistrial would have been appropriate. Just looking at the surveillance video very quickly, yes, Ali testified that Bud, Dante, Rosen, whoever got into his van, but when he talks about it, the identification is dark pants and a hoodie. It's December. You can step outside this courthouse for 10 minutes and see 20 people walk by wearing dark pants and a hoodie. That surveillance video, you can't see the person's face. It is kind of grainy if you can get it to play at all. So the surveillance video, I think in some other circumstances, could be overwhelming evidence. As the state argued, I don't think it constitutes overwhelming evidence here. So we have to look at Ali's testimony, which is unreliable, and then this improper testimony from Peterson, and without that, we don't have a fair trial. Thank you. We thank both parties for their arguments today. A written decision will be issued in due course. The court stands in recess until the next case is called.